HEIDE *v.* SOCIETATEA ROMANA DE AJUTOR SI CULTURA
BANATIANA.

1. CONTRACTS—MORTGAGES—MECHANICS' LIENS.

Where agreement between contractors and owner providing for
deeding of property to contractors for purpose of executing
mortgage by them in order to raise money to complete build-
ings, and then redeeding to owner, was not carried out in
terms, but owner gave mortgage direct, contractors were not
harmed but rather benefited by said change.

2. MECHANICS' LIENS—MORTGAGES—CONTRACTORS' REMEDY.

Agreement by contractors to accept note for any balance due,
if property was deeded to them and they executed mortgage
to raise money to complete building, *held,* not to remit them to
said remedy, where no such mortgage was given or note ten-
dered.

3. SAME—SUBROGATION—MORTGAGES.

Where contractors were active in helping to secure loan to com-
plete building and furnished mortgagee with sworn statement
of amounts due under contract to subcontractors, materialmen,
and laborers, mortgagee, as to sums paid by it and traced to
construction of building, is subrogated to contractors' rights
under mechanics' lien law.

4. SAME—PRIORITY OF LIEN—ESTOPPEL.

Loss of otherwise priority may arise where contractors, in effect,
by affirmative action, induce or procure mortgage to be given
for their benefit and they participate in proceeds.

5. SAME.

Contractors, by acting in concert with owner in securing loan to
complete building, are not estopped from having mortgage lien
limited in matter of priority to sums employed in construction
or actually paid to them under building contract.

Appeal from Wayne; Lamb (Fred S.), J., presid-
ing. Submitted January 19, 1933. (Docket No. 156,
Calendar No. 37,049.) Decided April 4, 1933. Re-
hearing denied June 5, 1933.

Bill by Michael J. Heide and another against Societatea Romana de Ajutor si Cultura Banatiana, a Michigan corporation, and Mystic Workers, an Illinois corporation, to foreclose a mechanic's lien. Cross-bill by defendant Mystic Workers to establish priority of a mortgage and to foreclose it. From decree rendered, plaintiffs and defendant Mystic Workers appeal. Modified and affirmed.

*Frank Day Smith,* for plaintiffs.

*Joslyn, Joslyn & Joslyn,* for defendant Mystic Workers.

WIEST, J. Plaintiffs, under contract executed October 25, 1928, constructed an assembly hall for defendant society, and filed the bill herein to foreclose a mechanic's lien. Defendant Mystic Workers filed a cross-bill to have a mortgage, executed by the society during the course of construction of the building, accorded priority over the lien. In May, 1929, and during the course of construction, the society ran out of funds, and it and plaintiffs were anxious to procure a loan upon the property in order to proceed with the work and pay subcontractors, materialmen, and laborers, as well as plaintiffs. Joint efforts along such line were made, but without success, and then it was agreed that if a loan could be obtained by plaintiffs the society would execute a deed to them and they would execute a mortgage to secure an issue of bonds and then reconvey the property to the society, subject to the mortgage. This agreement was in writing and provided, in part:

"That the parties hereto shall and will co-operate towards the raising of a mortgage on the land and building owned by the said party of the first part (the society) in a sum not exceeding $60,000, said

mortgage to be secured by a bond-issue mortgage so-called and promissory note.

"It is further agreed that in the event it becomes necessary to obtain the said mortgage upon the personal financial responsibility which the parties of the second part represent that they have rather than that of the party of the first part, then and in that event the said party of the first part agrees to convey by warranty deed subject to incumbrances of record all of their right, title, claim and interest in and to the said property to the said parties of the second part, and the said parties of the second part agree to reconvey in the same manner to the said party of the first part the same property so that the title may revest in said party of the first part immediately after the placing, filing and recording of the said mortgage.  *  *  *

"It is further agreed that the said party of the first part shall under all conditions assume to pay and discharge the said mortgage indebtedness to be placed against the said property without contribution from the parties of the second part.

"It is further agreed and understood that the proceeds to be obtained from the placing of the said mortgage shall be used in the following order:

"1. To pay and discharge the cost of filing and recording and execution of the said bond-issue mortgage, including any bonus or commission.

"2. To pay and discharge all liens which may have been filed against the said property.

"3. To pay and discharge any taxes or incumbrances on record against the said property.

"4. To pay and discharge all claims for labor and material which may have been placed in the said building by a subcontractor of the parties of the second part.

"5. To pay the balance to the parties of the second part at the time of the receipt from them of a waiver and release in full and sworn statements setting

forth the true condition and showing that the said parties of the second part are entitled to such payment under the building contract.

"It is further agreed that after the payment to parties of the second part from the proceeds of said mortgage, if there is any balance due and payable to the said parties of the second part on account of the contract price, then and in that event said balance so payable to the parties of the second part shall be paid by a promissory note which shall be executed at the time of the completion and acceptance of the structure by the party of the first part and the architect, said promissory note to bear interest at the rate of 6 per cent. and shall be payable 90 days from the date of its execution; that at the expiration of the 90-day period upon the payment by the said party of the first part of 10 per cent. of the principal of said promissory note and interest same may be renewed for a further period of 90 days and that at the expiration of each 90-day period a 10 per cent. of the original amount shall be paid in addition to accrued interest until the said promissory note shall be paid in full in installments of 10 per cent. of the principal amount.  *  *  *

"It is further agreed and understood that the party of the first part shall pay and discharge an indebtedness of $4,200 or thereabouts, which is due on the original indebtedness of $6,000 by way of loan obtained by said party of the first part from the Michigan Industrial Bank upon the indorsement or co-making of (by) said parties of the second part, it being understood that the party of the first part has received full credit for the said amount."

This agreement was not carried out according to its terms. However, the parties got in touch with the Mystic Workers and induced its representative in Detroit to take a mortgage for $50,000, executed by the society, and to advance money from time to

time thereunder to pay subcontractors, materialmen, and laborers as well as plaintiffs. Plaintiffs took an active part in inducing the Mystic Workers to take such mortgage and presented a sworn statement of the amount due under the contract. The mortgage was duly executed and various sums advanced for the purpose mentioned, upon orders signed by plaintiffs, the building was completed, and then plaintiffs filed a lien for the balance of the contract price and for extras. Plaintiffs' claim of lien was for the sum due them and excluded all sums paid subcontractors, materialmen, and laborers by the mortgagee.

In the circuit defendant Mystic Workers was considered the assignee of the lien rights of materialmen and laborers, whose claims were paid out of the mortgage loan, and was accorded priority over plaintiffs' lien for sums paid materialmen and laborers, and placed in subrogation to plaintiffs' lien as to all other sums paid under the mortgage, even though actually traced to construction purposes.

Plaintiffs appeal from the priority given for material and labor payments, claiming that liens therefor were not assigned by the materialmen and laborers to the mortgagee. The Mystic Workers also appealed, claiming right to priority to all sums paid out under the mortgage to or for the society, including a brokers' charge against the society, attorneys' fees, both for the attorney for the society and the attorneys for the mortgagee, and sums paid out to subcontractors, materialmen, laborers, and to plaintiffs under the construction contract. The mortgagee claims priority arising from waiver of lien by plaintiffs. Plaintiffs claim priority of the lien because the mortgage was subsequent to commencement of work under the building contract, and claim there was no waiver of lien by plaintiffs.

It is clear that plaintiffs were not only willing but were active in having the mortgage placed on the property so the work could go on, the bills be paid, and they could have some money for themselves. This is established by the mentioned agreement.

But it is contended, in behalf of plaintiff, that the agreement mentioned bonds, secured by a mortgage, and transfer of title to them for the purpose of executing such a mortgage, and the mortgage given was without bonds and given direct by the society, and, therefore, they are in no way estopped from having their lien accorded priority. This contention gives too much effect to the letter of the agreement and not enough to its purpose as ultimately accomplished. Plaintiffs were not at all concerned whether the mortgage secured a bond issue or not; they were concerned with having the society obtain a loan. Plaintiffs were benefited rather than harmed by the change from giving the mortgage themselves and in having the society give it.

The sworn statement of plaintiffs as to the sum due under the construction contract, and presented to the agent of the mortgagee by the attorney for the society and one of plaintiffs, induced the Mystic Workers to make the loan, and payments of the loan, by the agent of the mortgagee, to subcontractors, materialmen, and laborers, were made upon bills certified for such action by plaintiffs.

Counsel for plaintiffs cite 3 Comp. Laws 1929, § 13125:

"No lien provided for in this act shall be defeated or waived by the taking by the lien claimant, from any person, of any security for such debt, other than upon the real estate itself, in the absence of an express agreement that the taking of such security shall be a waiver of the lien."

No such question is here involved. The agreement by plaintiffs to accept a note for any balance due, if a mortgage was given by them, cannot be held to remit plaintiffs to that remedy, for no such mortgage was given and no note tendered.

We find no waiver of plaintiffs' lien, but do find subrogation thereof to sums paid by the mortgagee and traced to construction of the building. Loss of otherwise priority may arise where contractors, in effect, by affirmative action, induce or procure a mortgage to be given for their benefit and participate in the proceeds. This holding renders the claim of want of assignment of rights of subcontractors, materialmen, and laborers without merit.

The Mystic Workers ask too much. Waiver of priority has not estopped plaintiffs from having the mortgage lien limited in the matter of priority to sums employed in construction or actually paid to plaintiffs under the building contract. It should be kept in mind that the question of priority, here presented, involves only the rights of the principal contractors and the mortgagee, and not the rights of any subcontractors, materialmen, or laborers. Equitable considerations command that priority, within the scope we have mentioned, be accorded the mortgage lien. Plaintiffs were acting in concert with the society in procuring the loan, and it would be inequitable to now allow them to assert priority over the mortgage which they, in effect, procured to be made, and from which they received substantial benefits as planned.

The decree in the circuit found the amount due on the mortgage and the amount due plaintiffs under the contract and for extras, adjudged plaintiffs' lien had priority to that of the mortgage, except as to a former $4,000 mortgage, paid out of the Mystic

Workers' mortgage, and amounts paid to material-men and laborers, and directed a sale with appor-tionment of the proceeds in conformity with the pro-visions of the decree.

The decree in the circuit court will be modified to accord with this opinion, and the case is remanded to the circuit court for ascertainment of the indicated items accorded priority, and settlement of decree. There will be no costs to either party in this court, for both appellants are partly in error in their claims.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, FEAD, and BUTZEL, JJ., concurred.